UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
EVA GLIK, :
:
                    Plaintiff, :
: **MEMORANDUM & ORDER**
         -against- : 14-CV-4583 (DLI)
:
CAROLYN W. COLVIN, :
Commissioner of Social Security, :
:
                  Defendant. :
-------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

       On July 25, 2011, Plaintiff Eva Glik ("Plaintiff") filed an application for Social Security disability insurance benefits under the Social Security Act (the "Act"), alleging disability due to depression and anxiety beginning on February 1, 2009. (*See* Certified Administrative Record ("Tr."), Dkt. Entry No. 15 at 14, 117-18.) On October 20, 2011, Plaintiff's application was denied and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 14, 52.) A hearing was held before ALJ Edward H. Hein on September 19, 2012. (Tr. 14, 26-51.) Plaintiff appeared with counsel and testified at the hearing. (Tr. 26-51.) Andrew Vaughn, a vocational expert, also testified. (Tr. 26-51.) The ALJ issued a decision on November 30, 2012, finding that Plaintiff was not disabled prior to September 13, 2011 because she had no severe impairments prior to that date. (Tr. 14-21). However, the ALJ concluded that Plaintiff became disabled and was entitled to benefits as of September 13, 2011, when her age, education, work experience and residual functional capacity left her unable to perform a job that exists in significant numbers in the national economy. (Tr. 14, 20-21.) Plaintiff appealed the ALJ's decision, submitting additional evidence that was not before the ALJ at the time of his decision. (Tr. 4, 222-68.) On July 18, 2014, the ALJ's decision became the Commissioner of Social

Security's (the "Commissioner" or "Defendant") final decision when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.)

On July 31, 2014, Plaintiff filed the instant appeal seeking judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g). (*See* Complaint ("Compl."), Dkt. Entry No. 1.) Thereafter, Defendant moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings affirming the Commissioner's denial of benefits prior to September 13, 2011. (*See* Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def.'s Mem."), Dkt. Entry No. 12.) Plaintiff filed a cross-motion for judgment on the pleadings seeking either a partial reversal of the Commissioner's decision, or in the alternative, a remand for a new hearing. (*See* Mem. of Law in Supp. of Pl.'s Cross-Mot. for J. on the Pleadings ("Pl.'s Mem."), Dkt. Entry No. 14.) For the reasons set forth below, Defendant's motion for judgment on the pleadings is granted. Plaintiff's cross-motion for judgment on the pleadings is denied, and this appeal is dismissed in its entirety.

## BACKGROUND[1]

**A.   Relevant Medical Evidence**

    **1.   Evidence of Plaintiff's Diagnosis Prior to September 13, 2011**

In a July 31, 2009 letter, Dr. Amar Ghorpade, Associate Chief of Psychiatry at New York Methodist Hospital (Methodist Hospital), stated that Plaintiff was treated for major depression, and, upon discharge, would require medication management and outpatient psychotherapy. (Tr. 204.) Plaintiff received mental health services from the Jewish Board of Family and Children's Services ("JBFCS") from September 10, 2009 through January 4, 2011. (Tr. 172, 223-68.) In a four-month treatment plan approved on December 8, 2009, psychiatrist Sander Koyfman, M.D.

---

[1]   This section was adopted substantially from Defendant's summary of the administrative record. The Court reviewed the summary and citations to the administrative record for accuracy before relying on it here.

and Licensed Medical Social Worker ("LMSW") Samantha Belfon noted that Plaintiff exhibited symptoms of depression, manifesting in a general sense of not feeling well, irritability, anger, frustration, problematic interpersonal relationships, and problematic sleep patterns. (Tr. 262.) During therapy sessions, Plaintiff often was labile, exhibited varying moods, demonstrated difficulty exploring her past, and struggled to understand the underlying issues of her depression. (*Id.*) LMSW Samantha Belfon and Dr. Sander Koyfman assigned a global assessment of functioning[2] ("GAF") score of 48, noting that Plaintiff had a history of self-destructive thinking and behavior, and had been hospitalized twice during the summer of 2009. (Tr. 263.) Plaintiff denied any intent to harm herself, but, during her intake assessment, she reported "feeling as though she would be better off dead." (*Id.*) Dr. Koyfman and LMSW Belfon noted that Plaintiff's progress towards discharge criteria was minimal and recommended a continuation of weekly psychotherapy. (Tr. 264.)

In a March 12, 2010 report, Dr. Koyfman and LMSW Belfon noted that Plaintiff's progress remained minimal, although they also observed that Plaintiff had been able to make connections between her feelings and behavior. (Tr. 256.) Nevertheless, Plaintiff continued to lack insight into her overall problems, particularly with respect to her interpersonal relationships. (*Id.*) Her GAF score was 49. (Tr. 255.) On June 8, 2010, it was reported that Plaintiff had begun volunteering and was trying to "activate herself." (Tr. 246.) She was continuing to make some minimal progress towards discharge. (Tr. 248.) On September 1, 2010, it was noted that Plaintiff was seeking employment, but had been unsuccessful and found it very frustrating. (Tr. 238.) Plaintiff continued to perform volunteer work and make minimal progress towards mental

---

[2] A GAF score reflects a clinician's judgment of an individual's overall level of functioning. A GAF between 41 and 50 equates to "serious symptoms" or "serious difficulty in social, occupational, or school functioning." *See* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* at 34 (4th ed. 2000) (DSM-IV).

wellness. (Tr. 238, 240.) On December 6, 2010, it was noted that Plaintiff struggled with her feelings and emotions. (Tr. 230.) She was still looking for work and volunteering. (*Id.*) Plaintiff displayed symptoms of irritability, problematic interpersonal relationships, and often was depressed and anxious. (Tr. 232.)

A January 31, 2011 discharge summary from JBFCS stated that Plaintiff partially had achieved her therapeutic goals, including increased energy and improved use of time through volunteering a few days a week. (Tr. 223.) Plaintiff also continued to look for work actively, had begun GED courses, and had gained a deeper understanding into her stressors. (*Id.*) The discharge summary concluded that Plaintiff had made "moderate progress" towards overall treatment goals, rating 5 out of 7 on a progress scale (with 7 representing "very significant progress"). (*Id.*)

### 2. Evidence of Plaintiff's Diagnosis After September 13, 2011

On September 13, 2011, Dr. Frederick Zuckerman conducted a consultative psychiatric evaluation of Plaintiff. (Tr. 173-75.) Dr. Zuckerman noted that Plaintiff's face was grim, sad, and expressionless; her speech was slow and labored; it was a great exertion for her to speak; and, when she spoke, it was with "great anguish." (Tr. 173.) The content of her speech was "morbid and negative." (*Id.*) Plaintiff reported poor familial relationships and only a few friends, with whom she spoke infrequently. (Tr. 174-75.) She slept most of the day, making it difficult to maintain a daily schedule. (Tr. 174.) For 20 years, Plaintiff had been seeing Dr. Robert Levine, a psychiatrist, and had tried many different drug combinations, but reportedly suffered side effects in response to many of those medications. (Tr. 174.) Plaintiff's depression gradually was "overwhelming her and her family." (*Id.*) Her husband, who was present at the evaluation, stated that he had considered leaving her, but was afraid that Plaintiff would commit

4

suicide if he did. (*Id.*) Plaintiff was taking Risperdal and Klonipin to aid in sleep and to control her depression, but neither was effective. (*Id.*) Plaintiff reported three hospitalizations for depression since 1986. (*Id.*) She also reported bad dreams, but no delusions or hallucinations. (Tr. 175.) Upon a mental status evaluation, Plaintiff knew the date, day, time, and season, and she could perform mathematic calculations and read. (*Id.*) She also knew the city, state, mayor, and governor. (*Id.*) Her insight and judgment were good, but her mood was "very depressed." (*Id.*) Plaintiff's affect was normal, her sensorium clear, and her orientation was fine. (*Id.*) Plaintiff's attention and memory were excellent in all spheres and her cognitive function was fine. (*Id.*) However, the doctor noted that it was "imperative that the physician control [Plaintiff's] depression as soon as possible." (*Id.*) The doctor's diagnosis was major depressive disorder, recurrent. (*Id.*)

On October 17, 2011, a New York State agency psychological consultant, R. McClintock, completed a psychiatric review technique (PRT) in connection with Plaintiff's claim of disability. (Tr. 179-90.) Rating the paragraph "B" criteria for Listings 12.04 (*Affective Disorders*), the consultant found that Plaintiff had mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. In addition, Plaintiff never had experienced any episodes of decompensation of extended duration. (Tr. 179, 182, 189.) The consultant further noted that the record contained "no substantive evidence of significant functional limitations." (Tr. 193.)

In a February 6, 2012 letter, Irina Mushiyeva, a physician's assistant at Methodist Hospital, reported that Plaintiff was admitted to the hospital for major depression from March 4 to March 6, 2012. (Tr. 205.) The letter stated that, upon discharge, Plaintiff would need medication management and outpatient therapy. (*Id.*)

Dr. Leon Stern, a psychiatrist, began treating Plaintiff on September 18, 2011. (Tr. 209.) Plaintiff's medications at that time included Clonazepam and Doxepin. (Tr. 209, 212-20.) In a September 18, 2011 treatment note, Dr. Stern stated that Plaintiff reported anxiety and blurry vision. (Tr. 210.) On November 20, 2011, Plaintiff said that she was hitting herself and had difficulty sleeping. (Tr. 214.) On April 22, 2012, Plaintiff stated that she would feel better as the day went on and that her sleep was "OK." (Tr. 217.) On June 27, 2012, Plaintiff was depressed but relating much better. (Tr. 219.)

On September 5, 2012, Dr. Stern completed a Medical Source-Statement of Ability to Do Work Related Activities (Mental). (Tr. 207-08.) Therein, Dr. Stern reported that Plaintiff had no limitations in her ability to understand and remember short, simple instructions. (Tr. 207.) She had slight[3] limitations in her abilities to understand and remember detailed instructions, and make judgments on simple work-related decisions. (Tr. 207.) Plaintiff had moderate[4] limitations in her ability to carry out detailed instructions. (*Id.*) In support of these findings, Dr. Stern referenced a slight decrease in Plaintiff's attention and concentration. (*Id.*) Plaintiff's impairment also affected her ability to respond appropriately to supervision, co-workers, and work pressure. (Tr. 208.) She had moderate limitations in her abilities to interact appropriately with the public, supervisors, and co-workers. (*Id.*) She had marked[5] limitations in her abilities to respond appropriately to work pressure and changes in a routine work setting. (*Id.*) In support of these findings, Dr. Stern cited to Plaintiff's psychiatric history and his own ongoing treatment of Plaintiff. (*Id.*) Dr. Stern also stated that Plaintiff would have difficulty arriving to work on

---

[3] "Slight" is defined as "some mild limitations . . . but the individual can generally function well." (Tr. 207.)

[4] "Moderate" is defined as "some moderate limitation . . . but the individual is still able to function satisfactorily." (Tr. 207.)

[5] "Marked" is defined as "a serious limitation. The ability to function is severely limited but not precluded." (Tr. 207.)

time, had no motivation, exhibited anhedonia, and experienced a decrease in volition and energy. (*Id.*) In support of these findings, Dr. Stern cited to Plaintiff's history of psychiatric hospitalizations and suicide attempts. (*Id.*)

**B.     Relevant Non-Medical Evidence**

On August 8, 2011, Plaintiff completed an Activities of Daily Living Questionnaire for the State agency. (Tr. 138-48.) Plaintiff stated that she lived with her family and spent her days "sleeping a lot." (Tr. 138-39.) She needed her husband to remind her to care for her personal needs and take her medicine. (Tr. 140.) Plaintiff performed some light chores, but her husband did all the cooking. (Tr. 140-41.) She did not go out often and, due to anxiety, did not go out alone. (Tr. 141.) She did no shopping and was unable to handle money. (Tr. 142.) Plaintiff reported no hobbies or social activities. (Tr. 142-43.) She could walk for 15 minutes before needing to rest for 10 minutes. (Tr. 145.) Plaintiff had problems paying attention and remembering things, could not always finish what she started, and was unable to follow written or spoken instructions. (Tr. 145-46.) She had problems getting along with others and was "very much" affected by stress or changes in schedule. (Tr. 146.) Plaintiff experienced anxiety for 20 years and noted that it was triggered by certain events, situations, and memories. (*Id.*) She would become confused and fearful, and cry. (*Id.*) Her anxiety attacks occurred often and, following an attack, she needed an hour before being able to function again. (Tr. 146-47.)

In addition, Plaintiff completed a Work History Report on August 8, 2011. (Tr. 150-57.) Therein, she reported that she worked as a medical clerk at Lenox Hill Hospital between November 1990 and November 1997. (Tr. 150) She then worked as a medical receptionist at different offices until September 1999. (*Id.*) From November 1999 to January 2008, she worked

7

as a secretary at The Manhattan Center for Pain Management, also referred to as SLR Anesthesiology. (*Id.*; *see also* 32, 42, 121-22.)

Plaintiff also testified before the ALJ at the September 19, 2012 hearing. (Tr. 28-51.) Plaintiff stated that she was 59 years old and had at least a high school diploma. (Tr. 30.) Prior to leaving her secretarial position in January 2008, she took a temporary 30-day leave of absence. (Tr. 41-42.) When Plaintiff returned from her leave, her employer reduced her hours to part-time. (*Id.*) She was unable to "make a good living" working reduced hours. (Tr. 42.) Plaintiff further testified that her employer was uncomfortable with the fact that she was seeing a psychiatrist, and allegedly told her she should look for another job. (*Id.*) After leaving that job in January 2008, Plaintiff worked in several temporary positions between 2009 and 2011. (Tr. 36, 122-23.) These included positions at Forum Consulting, Medical Staffing Services, Brighton Eye Associates, and Staffers Incorporated. (Tr. 122-23.) She continued to look for full-time work but was unsuccessful. (Tr. 43.)

Plaintiff testified that she was admitted to the hospital in 2011 because she was hitting herself and "wanted to commit suicide." (Tr. 38.) She was released from the hospital after two days due to lack of insurance. (*Id.*) Following her discharge, she began going to a clinic. (*Id.*) Plaintiff also testified to a long history of difficulty finding the correct medication for her condition. (Tr. 44-46.) She testified as to another subsequent hospitalization at Methodist Hospital in 2012 stemming from problems with her medication. (Tr. 43-44.) While there, her medications were changed. (Tr. 44.)

**C.     The ALJ's Decision**

Prior to engaging in the applicable five-step evaluation, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2013. (Tr. 16.) At the first

8

step of the evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 1, 2009. (*Id.*) At step two, the ALJ found that, prior to September 13, 2011, Plaintiff had medically determinable impairments, namely depression and anxiety. (*Id.*) The ALJ nevertheless determined that Plaintiff did not have an impairment or combination of impairments that significantly limited (or was expected to significantly limit) her ability to perform basic work-related activities for 12 consecutive months prior to September 13, 2011. (Tr. 16-19.) In making that determination, the ALJ concluded that any impairments experienced by Plaintiff during that timeframe were situational. (Tr. 18.) As an example, the ALJ cited Plaintiff's 30-day leave of absence from her secretarial position, after which she returned work. (*Id.*) The ALJ further found that, prior to September 13, 2011, Plaintiff had only mild restrictions in the following broad functional areas: activities of daily living, social functioning, and concentration, persistence, and pace. (*Id.*) The ALJ also determined that Plaintiff experienced no episodes of decompensation of extended duration during the period prior to September 13, 2011. (*Id.*)

At step three, the ALJ determined that, beginning on September 13, 2011, Plaintiff's depression and anxiety constituted severe impairments, but did not meet or equal the criteria of the listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id.*) The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform the full range of work at all exertional[6] levels, with the following additional limitations: Plaintiff was unable to respond appropriately to work-related stress and changes in routine work setting; she was unable

---

[6] The lowest exertional level of work, sedentary work, involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a); Social Security Ruling (SSR) 96-9p. Although a sedentary job is defined as one which involves sitting for approximately six hours during an eight-hour work day, a certain amount of walking and standing is often necessary in carrying out job duties. *Id.* Jobs are sedentary if walking and standing are required occasionally or for a total of approximately two hours and other sedentary criteria are met. *Id.*

9

to maintain attention, concentration, and persistence due to side effects of medication; and she would likely miss more than two days of work per month. (Tr. 19-20.)

At step four, the ALJ determined that, as of September 13, 2011, Plaintiff was unable to perform her past relevant work as a secretary. (Tr. 20.) At step five, the ALJ considered Plaintiff's age as of her alleged onset date (55, considered to be an advanced age), education (at least high school), ability to communicate in English, and RFC for work at all exertional levels. (Tr. 20-21.) The ALJ determined that Plaintiff had no transferable skills. (Tr. 20.) The ALJ also determined that, while Plaintiff had the ability to perform work at all exertional levels, beginning on September 13, 2011 that ability was compromised by her nonexertional limitations. (Tr. 21.)

The ALJ considered the testimony of vocational expert Andrew Vaughn, and determined that Plaintiff was unable to make a successful vocational adjustment to work that exists in significant numbers in the national economy. (Tr. 21, 31-51; *see* Tr. 106-07.) Accordingly, the ALJ found Plaintiff disabled under the Act as of September 13, 2011. (Tr. 21.)

## DISCUSSION

### A.  Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask

whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004).

**B.     Disability Claim Framework**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (c). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

The ALJ must adhere to a five-step inquiry to determine whether a claimant is disabled

11

under the Act, as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education, and work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities include functions such as lifting, carrying, sitting, seeing, hearing, speaking and walking. *See* 20 C.F.R. § 404.1521(b)(1)-(2). Basic work activities also include mental functions such as understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1521(b)(2)-(6). Additionally, it is Plaintiff's burden to establish a severe impairment at step two. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("The claimant . . . bear[s] the burden . . . at step two that [s]he has a medically severe impairment or combination of impairments."). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding regarding the claimant's RFC in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at step five, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

## C. The ALJ's Decision

In making his determination, the ALJ performed the five-step inquiry and considered the objective medical evidence and other evidence in accordance with 20 C.F.R. § 404.1529 and Social Security Rulings ("SSRs") 96-4p and 96-7p. (Tr. 17-18.) The ALJ also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-03p. (*Id.*) At step two, the ALJ found that, despite the presence of medically determinable impairments, neither Plaintiff's depression nor her anxiety were severe impairments prior to September 13, 2011. (Tr. 16-19.) In particular, the ALJ determined that the limitations associated with Plaintiff's impairments were situational during that timeframe, and failed to satisfy the Act's requirement that a qualifying disability must result from a medically determinable impairment and must have lasted (or been expected to last) for twelve consecutive months. (Tr. 18); *see also* 42 U.S.C. § 423(d)(1)(A). In addition, the ALJ noted that Plaintiff reported at the hearing that she worked a number of temporary jobs during the period prior to September 13, 2011. (Tr. 18.)

## D. Application

The Commissioner moves for judgment on the pleadings, seeking affirmance of the denial of Plaintiff's benefits prior to September 13, 2011 on the grounds that the ALJ's decision applied the correct legal standards and was based upon substantial evidence. (*See generally* Def.'s Mem.) Plaintiff cross-moves for judgment on the pleadings, contending that the ALJ's decision was not based upon substantial evidence; rather, the substantial evidence supports a

13

finding that Plaintiff became eligible for disability benefits beginning February 1, 2009. (*See* Pl.'s Mem. at 6-9.) For the reasons that follow, the Court finds that the ALJ's decision was supported by substantial evidence, and Plaintiff's arguments to the contrary are unfounded.

### 1. The Substantial Evidence

Here, the substantial evidence of impairment prior to September 13, 2011 that Plaintiff relies upon consists of: (1) her hospitalization at Methodist Hospital and Dr. Ghoparde's July 31, 2009 letter concerning her discharge; (2) the January 31, 2011 discharge summary from JBFCS; and (3) her ongoing psychiatric treatment records from JBFCS for 2009-2011. Notably, the ALJ was limited to considering only the first two items, as Plaintiff did not submit her 2009-2011 treatment records until she sought review of the ALJ's decision before the Appeals Council. As an initial matter, a review of those first two items supports the ALJ's relevant step-two findings, including that: (1) Plaintiff did not have a severe impairment or combination of impairments that limited her ability to perform basic work activities prior to September 13, 2011; (2) Plaintiff's impairments during that period were situational, and she had only mild restrictions in her daily living activities; (3) the record did not document any episodes of decompensation of extended duration during that period; and (4) after September 13, 2011, Plaintiff's impairment became severe. (*See* Tr. 16-18.)

For example, Dr. Ghorpade's July 31, 2009 letter stated that Plaintiff only required outpatient psychotherapy following her discharge from Methodist Hospital. (Tr. 18, 204.) Furthermore, the ALJ properly took note of Plaintiff's testimony at the hearing indicating that her hospitalization was due to mismanagement of her medication, and her condition improved when her medication was adjusted. (Tr. 18, 43-45.) The JBFCS discharge summary, in turn, noted that Plaintiff was being treated for major depressive and personality disorders beginning in

14

August 2009. (Tr. 227.) The associated symptoms manifested as, *inter alia*, a lack of motivation and irritability. (*See* Tr. 17, 172, 223-26.) However, the discharge summary reported that Plaintiff made moderate progress towards treatment goals between August 2009 and January 2011. (Tr. 223.) In particular, Plaintiff showed an overall gain in energy, was volunteering a few days a week at increased hours, had begun a course of GED classes, and continued to actively search for employment. (Tr. 223-226.)

Turning to the 2009-2011 treatment records Plaintiff submitted to the Appeals Council, a court may order the Commissioner to consider additional evidence only upon a showing that: "(1) the proffered evidence is 'new and not merely cumulative of what is already on the record,' (2) that the evidence is 'material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative,' and (3) that there is good cause for the failure to present the evidence earlier." *Batista v. Astrue*, 2010 WL 3924684, at *11 (E.D.N.Y Sept. 29, 2010) (quoting *Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991)); *see also* 42 U.S.C.S. § 405(g); *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988). With respect to the materiality requirement, new evidence is considered "material" only if it is relevant to the plaintiff's condition during the period for which benefits were denied, spanning from the alleged onset date through the ALJ's decision. *Tirado*, 842 F.2d at 597. Materiality also requires a "reasonable possibility" that new evidence would have influenced the Commissioner to decide the plaintiff's application differently. *Id.*

Here, aside from a bare and conclusory allegation that they were "not available," Plaintiff does not offer any explanation for her failure to submit her 2009-2011 treatment records to the ALJ. (Pl.'s Mem. at 3 n.2.) In any event, those records do not support a reasonable possibility that the ALJ, having considered them, would have reached a different conclusion. In fact, the

15

JBFCS discharge summary, which the ALJ did consider in making his determination, largely distills the information from the 2009-2011 treatment records. As such, those records are substantially cumulative. A detailed review of those records suggests that Plaintiff, based on assigned GAF scores, had "serious symptoms" during the period prior to September 13, 2011. However, as reflected in the subsequent discharge summary, the records also confirm that Plaintiff was making progress in therapy and demonstrating improvements over the course of that period. Such improvements included volunteering at Sloan Kettering Cancer Center, increasing her volunteer hours, undertaking GED classes, and actively searching out employment while looking forward to resuming full-time work. (Tr. 18, 223, 230, 238, 246.) Accordingly, while the new evidence offered by Plaintiff is relevant to her condition prior to September 13, 2011, those records do not establish a reasonable possibility that the ALJ's decision would have been different had he considered them.

### 2. Plaintiff's Credibility

Where, as here, "the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, [he] must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 435 (S.D.N.Y. 2010). When the ALJ neglects to discuss at length his credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate. *Id.* at 435-36. SSR 96–7p sets forth seven factors that an ALJ must consider in determining the credibility of a claimant's statements about his or her symptoms and the effects of his or her impairments:

(1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . . ; and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Here, Plaintiff does not contest the ALJ's finding that her testimony was "not entirely credible." (Tr. 18.) Nevertheless, the Court addresses that finding because Plaintiff's testimony comprised part of the substantial evidence the ALJ relied upon in making his determination. The Court concludes that the ALJ properly considered the required factors. (Tr. 16-18.) As discussed above, the ALJ examined the pertinent medical records and found that they did not support Plaintiff's subjective complaints concerning the intensity, persistence and limiting effects of her symptoms prior to September 13, 2011. (*Id.*) The ALJ noted that substantial evidence indicated that Plaintiff was able to perform activities of daily living, which further was supported by Plaintiff's testimony to the extent she admitted to working at a number of temporary and volunteer jobs during the period prior to September 13, 2011. (Tr. 18, 36.) Finally, the ALJ also noted that Plaintiff complained that she had difficulty concentrating, but at the same time Plaintiff stated that she read. (Tr. 18.)

Upon review, the record confirms the ALJ's conclusion that there were legitimate reasons to find Plaintiff's testimony "not entirely credible," at least with regard to her impairment prior to September 13, 2011. (*Id.*) In particular, the inconsistencies evident in Plaintiff's testimony support the ALJ's decision to rely on the objective medical evidence over Plaintiff's subjective complaints.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted. Plaintiff's cross-motion for judgment on the pleadings is denied, and this appeal is dismissed in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
   March 30, 2016

                 /s/
               DORA L. IRIZARRY
              United States District Judge